# UNITED STATES COURT OF APPEAL
## FOR THE FOURTH CIRCUIT
### RICHMOND VIRGINIA

---

## APPELLANT'S BRIEF

## RE: 15-2599   SYED ASKRI v. Fst. HORIZON BANK[1], THOMAS GORMAN

### US District Court Case No. 1:15-cv-01135;   BK No. 15-11267-RGM

---

## I

## STATEMENT OF JURISDICTION

This court has jurisdiction under 28 USC §1291 to review a final order of United States District Court Final Order, Dismissing the Appeal without Prejudice. The Jurisdiction of this court is involved over this matter, pursuant to 28 U.S.C. § 1291, in that this appeal is taken from the dismissal Order of the District Judge Honorable Anthony J. Trenga ordered from the Bench in Case No. 1:15-cv-1135 and Bankruptcy Court Case No.15-11267-RGM on December 18, 2015, affirming the Bankruptcy Order [Bk.Dkt.51] and allowing appeal to 4th Cir Court of Appeal. [District Ct. Dkt.20]

Appellant certifies that the instant appeal arises from a final decision and Order of the United States District Court, Eastern District of Virginia. Appellant

---

[1] First Horizon Bank is non existing entity and Financial Institution. The Actual Creditor is M&T Bank N.A f/k/a Wilmington Trust. First Horizon and Fst Tennessee Bank N.A are misrepresenting and misdirecting the Court.

also certifies that the instant appeal arises from a final decision and Order of the United States District Court, Eastern District of Virginia. [District Ct. Dkt.20]

Appellant filed Memorandum of Law for Stay Pending Appeal in the US District Court Eastern District of Virginia. Appellant reserved his right to file Amended Notice of Appeal pursuant to ruling on Appellant's Memorandum of Law for Stay Pending Appeal, to add and include the Appellant's Designation of more Record and statements of Issues presented on the Appeal. *See NOA to this Court*

The US District Court never ruled on the, Appellant Memorandum of Law for Stay Pending Appeal.

## II

## TIMELINESS OF NOTICE OF APPEAL

The August 20, 2015 Bankruptcy Court Orders dismissing case was the final Order in this matter, pursuant to 28 U.S.C. §1291. Order or decree of bankruptcy judge Honorable Robert G. Mayer entered in above captioned case, signed on August 18, 2015, and entered on the 20th and 23rd day of August 2015, denying the Debtor's 100% Funded Chapter 13 Plan confirmation, without leave to amend and dismissing the Case. [Dkt.51, 52] On August 27, 2015, Appellant filed his Notice of Appeal, (NOA) within fourteen (14) days of the Bankruptcy Court's

final Order, [Dkt.53] and paid appeal filing fee $ 298.00, Receipt Number132186. [Dkt.54]

Appellant within 30 days of the Order filed the timely NOA in this court from the dismissal Order of the District Judge Honorable Anthony J. Trenga ordered from the Bench in Case No. 1:15-cv-1135 and Bankruptcy Court Case No.15-11267-RGM on December 18, 2015, affirming the Bankruptcy Order [Bk.Dkt.51] and allowing appeal to 4th Cir Court of Appeal. [District Ct. Dkt.20]

## III
## INTRODUCTION

This appeal arises from the trial court's improper granting of the Appellee Chapter-13 trustee's Motion to dismiss case after a motion hearing. In this, the Appellants' Initial Brief, the Appellant, Syed Askri shall be referred to as "the Syed Askri" or "the Appellant." The Appellee, Chapter 13 Trustee, shall be referred to as "Trustee" or "the Appellee" and First Horizon Bank is referred to as "alleged Nominal Lender" for 2nd trust or "the Previous Servicer, which sold this 2nd mortgage to M&T Bank f/k/a Wilmington Trust is referred to as "real party in interest" or "the Appellee" or holder of the void instrument due to rescission as a defense to foreclosure. References to the record below will be denoted by a bracketed parenthetical containing the letter "Dkt." followed by the page number or numbers upon which the cited material appears. All emphasis has been supplied unless otherwise noted.

3

The United States District Court Eastern District of Virginia had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1367(a). That court entered final judgment on August 20, 2015 [Dkt.51, 52], and Appellant Syed Askri filed a timely notice of appeal on August 27, 2015 filed Notice of Appeal within fourteen (14) days of the Bankruptcy Court's final Order, [Dkt53] and paid filing fee of $ 298.00. [Dkt.54] Pursuant to 28 U.S.C. § 1331and 28 U.S.C. § 1337, the U.S. District Court for the Eastern District of Virginia had jurisdiction over Appellant's Complaint.

The United States District Court Eastern District has appellate jurisdiction pursuant to 28 U.S.C. § 1334(a) which grants appellate review of final decisions of United States Bankruptcy Court Eastern District of Virginia Alexandria. Bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. Appellant certifies that the instant appeal arises from a final decision of the United States Bankruptcy Court Eastern District of Virginia Alexandria Division.  In 2005, the appellant, Syed Askri ("Appellant"), refinanced their 2nd mortgage loan with the first Horizon Bank on their primary residence located at 23367 Kerrisdale Way Sterling, VA 20166,(subject property). First Horizon Bank Sold this 2nd Mortgage loan to M&T Bank f/k/a Wilmington Trust

In February 2014 Appellant and his non filing wife Rizwana Askri rescinded the loan transaction as a defense to foreclosure and under Truth in Lending

4

Act,(TILA) and mailed copies of rescission notice to alleged lenders, their

servicers America's Servicing Company,(ASC) first mortgage servicer, First

Tennessee Bank,(Fst. Tennessee) the 2nd mortgage servicer, Bank of America,

(BOA) the 3rd mortgage servicer, M&T Bank N.A and US Bank N.A, which

ignored and failed to take actions within 20 days window, which was closed. *See*

*Sherzer,* 707 F.3d at 255; *Gilbert,* 678 F.3d at 271; *Williams v. Homestake Mortg.*

*Co.,* 968 F.2d 1137 (11th Cir. 1992)

On March 20, 2015 Appellant and his wife sent another rescission notice

which was also ignored by the alleged creditors, their agents and their counsels

representing them. 20 days window was closed and rescission was self-imposed by

operation of law.

Since 2014, the nominal lender on Deed of Trust, (DOT) and servicers, Fst.

Tennessee (2nd mortgage) and ASC (1st mortgage), have been aggressively

attempting to foreclose on the property, when Appellant was not in default.   Fst.

Tennessee (2nd mortgage), ASC (1st mortgage) and BOA did not take any action on

rescission, nor timely and legally challenge, the Notice of Rescission within the

statutorily mandated twenty (20) day period. Accordingly, Appellant asserts that

they (along with any other transferees of the DOT, and/or Note are now simply

unsecured creditors which have permanently waived all of their defenses and

claims, as well as the right to any financial payments from the borrowers, because

now they are holder of void instruments. Fst. Tennessee (2nd mortgage), ASC (1st mortgage) cannot take any action on a void DOT and unsecured Note. Appellant did offer tender which was also ignored. What opposition is doing here is creatively attempting to avoid basic pleading requirements and using motion practice and wrongful foreclosure as a vehicle for sidestepping the basic requirements of getting relief in court. Hence the motions in the trial court and the brief in the appellate court by the non-creditors, now unsecured should be struck with prejudice as raising issues that are untimely and on issues in which the jurisdiction of the trial court and the appellate court has not been invoked.

Fst. Tennessee (2nd mortgage), ASC (1st mortgage) were claiming to be holders of instruments entitling them to foreclose. Now that point is moot because the rescission is effective upon mailing and the instruments they claim to hold are void anyway. On April 15, 2015, Debtor (Appellant) filed for Voluntary Petition under Chapter 13 bankruptcy Code in good faith. The purpose of this filing was to pay $ 3,366.76 per month to Chapter 13 trustee to seek, through Discovery pursuant to Rule 2004 Examinations and an Adversary Proceeding, to prove and validate his Rescission claims and to determine the tender amount after taking in considerations of Debtor's monthly mortgage payments, other fees, and her damages pursuant to violation of TILA by Fst. Tennessee (2nd mortgage), ASC (1st mortgage) and BOA et al. Appellant paid total of $ 13,467.04 prior to dismissal of

the case to Chapter-13 Trustee, which he has not returned to the Appellant as of filing this brief. Despite proposing a plan in good faith with a 100% payment amount on the filed POCs ($184,241.91), including an extra payment of $20,200.60 (10% for the Trustee's fee), the confirmation was denied.[Trustee's administrative fee is not more than 1.5% as admitted by the chapter 13 trustee in open court on August 13, 2015, during the trustee's motion hearing. (The trustee's administrative fee was proposed $ 17,436.97 more)    On July 08, 2015, Debtor filed a proposed Chapter 13 Plan, (Plan) including all appropriate Schedules. [37] On July 31, 2015 Chapter-13 Trustee filed objections to Debtor's 100% funded plan plus $ 17,436.97 in addition as trustee's fee instead of 1,5% as admitted by trustee. Id.

On June 3, 2015 Trustee filed Motion to Dismiss Case, [Dkt.28] and Debtor filed response in opposition to trustee's Motion to Dismiss on June 24, 2015. [Dkt.32]. Trustee's Motion to Dismiss Case [Dkt.28] was filed prior to 100% funded plan, therefore the trustee's motion to dismiss case was premature and moot on August 13, 2015 when the Bankruptcy Court dismissed the case and denied 100% funded plan. On August 13, 2015, upon the Trustee's Motion to Dismiss Case [Dkt.28], the Court granted trustee's Motion and dismissed the case. On August 20, 2015 Bankruptcy Court issued Memorandum Opinion related to chapter 13 trustee's Motion to dismiss case and order granting trustee's motion. At

the hearing held on August 13, 2015 the Bankruptcy Court granted Chapter 13 Trustee's Motion and dismissed the case, without prejudice, and an Order thereon was entered on September 3, 2015. [51, 52]. Debtor filed NOA on August 27, 2015. [Dkt.53]

On September 01, 2015 Appellant filed a Designation of Items to be included in record on appeal and to be presented on appeal pursuant to Federal Rules of Bankruptcy Procedure 8006 with the Bankruptcy Court.

Appellant believes that it was error, a breach of discretionary authority, Bankruptcy court abused its discretion when it wrongly concluding that the Debtor/Appellant's more than 100% Funded Chapter 13 Plan's confirmation denied, without leave to amend and Dismissing the Case, based on chapter 13 trustee's wrong assertions and personal conflict of interest.

## I.    *Trustee  Conceded Appellant's allegation of  his conflict of interest*

Appellant averred in the Appellant's Brief that;

A.    "The Bankruptcy Court's Order was not in the interests of justice for the Bankruptcy judge to dismiss the Chapter 13 proceeding at this time based on insubstantial allegations and mere administrative *issues* and on trustee's *personal* conflicts of interests and *biased* attitude towards Debtor, his non filing wife due to trustee's personal conflicts of interest, where Chapter-13 trustee's *girlfriend* played a role and trustee acted in bad faith. Mr. Gorman failed to

disqualify himself in this case proceeding because of his *impartiality*[2] is

reasonably be questioned and he has a personal bias or prejudice concerning a

Appellant's attorney due to his girlfriend. *(See Pg.4-5 of Appellant Brief and*

*Reply Brief pg. 1)*

B.     "..............involvement of Chapter 13 trustee Mr. Gorman's personal

interests in looking after the interests of *his* girlfriend who was *dictating* and

*directing* him *how to act*, putting pressure on him to have judgment obtained as

per *her* wishes and mere administrative issues." *(See Pg.9 of Appellant Brief*

*under "F" and Reply Brief pg.2)*

C.     "In the past the Chapter 13 trustee has provided help to his girlfriend who

used to file chapter 13 plans based on bad faith and those plans were approved

and or continued un-necessarily with the *aid* of Chapter 13 trustee Mr. Gorman,

who could have *recused* from that chapter 13 *underfunded* plans." *(See Pg.10 of*

*Appellant Brief under "G" and Reply Brief pg.2)*

D.     "Gorman was poisoned by his girlfriend against the Appellant because of a

fight between the Appellant's counsel and Mr. Gorman's girlfriend who used to

be the partners and then separated. Mr. Gorman is not even to be fit for the

---

[2] The United States Trustees act in the public interest to protect and preserve the integrity of the
bankruptcy system of the United States by regulating the conduct of parties; ensuring compliance
with applicable laws and procedures; bringing civil actions to address instances of abuse;
securing the just, speedy, and economical resolution of bankruptcy cases; and identifying,
evaluating, referring, and supporting the prosecution of criminal bankruptcy violations.

trustee position because he is using his personal interest to damage Appellants and the creditors." *(See Pg.11 of Appellant Brief and Reply Brief pg.2)*

Appellee Trustee and or his counsel failed to rebut Appellant's allegation and as such conceded that the Appellant's assertions are correct.

## II. *Trustee Conceded Appellant's allegation of instructing and providing the legal advice to alleged creditor's attorneys how to argue the case and write pleading against the Appellant*

Appellant averred in the Appellant's Brief that;

"Did the Bankruptcy Court commit an error of law and/or abuse its discretion when it failed to require the Chapter 13 Trustee to appropriately and effectively *protect* the interests of the Debtor, in addition to protecting the interests of the alleged Creditors, and their attorneys to whom the trustee was *instructing* and providing the *legal advice* how to argue the case against Appellant and write pleading." *(See Pg.9 of Appellant Brief and Reply Brief pg.2)*

Appellee Trustee and or his counsel failed to rebut Appellant's allegation and as such conceded that the Appellant's assertions are correct.

## III. *Appellants Proposed Plan was 100% Funded for Filed Proof of Claims,(POCs)*

Appellant Proposed Plan was 100% funded, *$ 3366.76* per month for *60* months as shown below;

The debtor(s)' schedules list assets and liabilities as follows:
    Total Assets: $1,749,820.01
    Total Non-Priority Unsecured Debt: $0.00
    Total Priority Debt: $0.00
    Total Secured Debt: 1,050,866.00

1.    **Funding of Plan.**  The debtor(s) propose to pay the Trustee the sum of $ 3,366.76            per
    month        for 60    months.   Other payments to the Trustee are as follows:
    _____.  The total amount to be paid into the Plan is
    $ $202,006.10              .

It is very strange the Chapter 13 Trustee intentionally and knowingly trying to

mislead and misdirect the court about the Appellant's 100% funded Chapter 13

Plan and Appellee Trustee's Brief has never mentioned about this ___payment of $___

___3,366.67.___ This clearly indicates Trustee Appellee's biased attitude towards the

Appellant, because he was working on the directions and script written by his

girlfriend as conceded by the trustee and his counsel. *See Supra*

Appellant Plan Section "5" clearly meets the 100% payment to first and 2nd

mortgage as shown below;

5.    Mortgage Loans Secured by Real Property Constituting the Debtor(s)' Primary Residence;
    Other Long Term Payment Obligations, whether secured or unsecured, to be continued
    upon existing contract terms; Curing of any existing default under 11 U.S.C. § 1322(b)(5).

    A.    Debtor(s) to make regular contract payments; arrears, if any, to be paid by Trustee.
        The creditors listed below will be paid by the debtor(s) pursuant to the contract without
        modification, except that arrearages, if any, will be paid by the Trustee either pro rata with
        other secured claims or on a fixed monthly basis as indicated below, without interest unless an
        interest rate is designated below for interest to be paid on the arrearage claim and such
        interest is provided for in the loan agreement.

| Creditor | Collateral | Regular Contract Payment | Estimated Arrearage | Arrearage Interest Rate | Estimated Cure Period | Monthly Arrearage Payment |
|---|---|---|---|---|---|---|
| US Bank N.A | 23367 Kerrisdale Way Sterling, VA 20166 | $ 2,684.00 | $104,515.97 | 0.00 | 60 months | $ 1741.93 |
| M&T Bank N.A | 23367 Kerrisdale Way | $ 600.00 | $74,855.36 | 0.00 | 60 months | $1,247.58 |

Appellant Plan Section "11" clearly states that  Appellant will make *$ 3,366,76 for 60 months meets the 100% payment* to *1ˢᵗ Mortgage*, *2ⁿᵈ mortgage* and *Homeowner Association* as shown below;

**11.    Other provisions of this Plan:**
Debtor will pay to Trustee $ 3,366.76 per month for 60 months, which totals as $ 202,065.60. The accounting in POC # 1.1, 2.1 and 3.1 are incorrect. Debtor will adjust his monthly payment after the accountings are corrected. Debtor will file objections to POCs and Adversary Proceeding(s) as and when required to remove the lien(s) because the property is under water.

**Signatures:**

**Dated:** _July 8, 2015_ .

_Syed Askri_                                            _/s/ Bobbie U. Vardan_
**Debtor**                                              **Debtor(s)' Attorney**

_N/A_
**Joint Debtor**

Appellee Trustee falsely states, that "Debtor/Appellant had not filed any objections to the filed mortgage arrearage." *(See Appellee Trustee's Brief pg.8)* The deadline to file Proof of Claims, (POC). Bankruptcy Court Dkt. 6 clearly states the POC filing deadlines as shown below;

a)  Proofs of Claim due by                    08/17/2015

b)  Government Proofs of Claim due by       10/13/2015

Appellant was waiting for deadline to file the POC, so that he can file the objections to POCs after all of the claims were filed in the claim register. The exact and true copy of the Bankruptcy *Dkt.6* is reproduced below;

| 11/29/2015 | | 6 | Eastern District of Virginia - LIVE<br>Meeting of Creditors: 05/19/2015, 02:30 PM, Office of the U.S. Trustee, 115 South Union Street, Suite 206, Alexandria, Virginia. Proofs of Claim due by 08/17/2015. Government Proofs of Claim due by 10/13/2015. Confirmation hearing: 06/24/2015, 09:30 AM, Judge Mayer's Courtroom, 200 South Washington Street, 2nd Floor, Courtroom I, Alexandria, VA. Interim Trustee: Thomas P. Gorman, . |
| 04/16/2015 | | | |

## IV. Appellant Proposed Plan was filed in Good Faith

On or about April 2015 Wells Fargo Bank N.A and its subsidiary ASC on behalf of US Bank N.A as Terminated Trustee of the "MBS TRUST", scheduled an illegal foreclosure on the Appellant's primary residence for April 16, 2015, when Appellant loan was *rescinded,* and the alleged creditors were holder of the Void DOT and unsecured Note by operation of Law. *See Sherzer,* 707 F.3d at 255; *Gilbert,* 678 F.3d at 271; *Williams v. Homestake Mortg. Co.,* 968 F.2d 1137 (11th Cir. 1992) and *Jesinoski v. Countrywide Home Loans, Inc., et al.* 574 US ___ (2015),

## V. Debtor Acted in Good Faith and his Chapter 13, 100 % Funded Plan is Not Prejudicial to Creditors, who were not before the court

It is established that simple filing of a bankruptcy petition to avoid foreclosure does not constitute bad faith. *In re Jonathan Barnes Leavitt v. Carlos Soto,* 171 F.3d 1219 (9th Cir 1999) The only entities listed as "Creditors" in Appellants Bankruptcy Petition were the "Nominal Lenders", the servicers and all of the identifiable transferees of the mortgage loan. There are no other creditors whatsoever involved.   Appellant objected to Trustee's characterization that,

13

"Debtor did not file his Chapter 13 Petition in good faith as Debtor's intent in filing this case was only to frustrate his creditors' attempts to foreclose on his residence". (See *MTD pg 1Dkt.28*)

Appellant objected to Trustee's characterization that, "his [Debtor's] proposal to avoid both the first and second deeds of trust on his residence." (*See MTD pg 1Dkt.28*). *Appellant* objected to Trustee's characterization that, "she [Debtor's wife] was also using the automatic stay to challenge the validity of the mortgage lienholders of the notes secured by the same marital residence." (*See MTD pg 1Dkt.28*)

*Appellant* objected to Trustee's characterization that, " Similarly, in Debtor's present case, he is also seeking to make the same challenges to the validity of the mortgages on his residence that were already raised in Rizwana Askri's Chapter 13 case." (*See MTD pg 1and 2Dkt.28*) *Appellant* objected to Trustee's characterization that, "In fact, this Debtor[Syed Askri] interjected himself into Rizwana Askri's case to assert his claims, defenses, and disputes over the creditors' holder in due course status." (*See MTD pg 2Dkt, 28*)

Mr. Gorman was *poisoned* by his girlfriend against the Appellant because of a *fight* between the Appellant's ex-counsel and Mr. Gorman's girlfriend who used to be the partners and then separated. Mr. Gorman is *not* even to be fit for the trustee *position* because he is using his personal interest to *damage* Appellants and the creditors.

Appellant objects to Trustee's characterization that, "Debtor does not have the ability to sustain the regular mortgage payments on his residence, let alone have the ability to make additional Plan payments to cure the substantial mortgage arrearage claims." (*See MTD pg 2Dkt.28*) *Appellant* objects to Trustee's characterization that, "Based on the mortgage arrearage claim filed by First

Horizon Bank [3] and the mortgage arrearage amounts asserted in the Objection to Confirmation filed by U.S. Bank, [4] the amount of mortgage arrearages on Debtor's residence as of the petition date now total $179,455.36, [5] which Debtor is unable to cure through a Chapter 13 Plan." (*See MTD pg 2Dkt.28*)

Appellant's proposal for payment of $ 3,366.76 [6] for 60 months ($ 202,005.60 ) for the filed Proof of Claim,(POC) of $184,241.91 plus, Despite proposing a plan in good faith with a 100% payment amount on the filed POCs ($184,241.91), including an extra payment of $20,200.60 (10% for the Trustee's fee), the confirmation was denied.[Trustee's administrative fee is not more than 1.5% as admitted by the chapter 13 trustee in open court on August 13, 2015, during the trustee's motion hearing]. (The trustee's administrative fee was proposed $ 17,436.97 more)    to the alleged mortgage creditor regarding the disputed and rescinded loan was made in good faith, based upon Appellant's prior formal Rescission thereof.

---

[3] Creditor is M&T Bank and not First Horizon Bank as alleged by the Trustee. The amount of POC is incorrect, with wrong calculations and Bankruptcy Judge Hon Robert G. Mayer instructed the BWW attorney representing Fist Tennessee in the presence of Chapter 13 trustee to correct the accounting. Judge Mayer himself calculated the amounts from the First Tennessee's filed POC. See also FN3 &4

[4] The amounts are incorrect, and trustee having fiduciary duties towards both the creditors and Debtors failed to take notice of the incorrect accounting by the US Bank. Debtor repeatedly requested accountings, which were not provided. Under Virginia law, an <u>accounting is a form of equitable relief which is available upon order of a court in equity</u>. McClung v. Smith, 870 F. Supp. 1384, 1400 (E.D. Va. 1994), *See* Bain v. Pulley 201 Va. 398, 111 S.E.2d 287 (1959) In *Wilkins v. Gordon, 38 Va.* 547 (1841), the Virginia Supreme Court held that a trustee cannot proceed to sell a trust subject until the debts are settled and ascertained. A party facing foreclosure has a right to petition the Court in equity for a determination on the debt owed when the amount is uncertain. *Wilkins, 38 Va. at 556-57. See generally Wills v. Chesapeake W. Ry. Co., 178 Va. 314* (1941) (a court sitting in equity may set aside an invalid foreclosure). Under Virginia law, an <u>**accounting is a form of equitable relief**</u> which is available upon order of a court in equity. *McClung v. Smith, 870 F. Supp. 1384, 1400 (E.D. Va. 1994),* to require trustees or agents to account for their actions in dealing with the funds of beneficiaries or principals *See Bain v. Pulley, 201 Va. 398* (1959)

[5] Trustee's calculations are incorrect, failed to investigate the claims and false accountings submitted by the First Tennessee and US Bank.

[6] Trustee failed to mention this amount of Proposed Plan in his Brief.

Appellant has repeatedly asked the Bankruptcy Court to recognize that the Rescission issue is the key contested matter and will require Discovery and an Adversary Proceeding, (AP) in order for the Bankruptcy Court to properly review the Rescission and make a determination. *See, e.g., Lopez v. Delta Funding Corp., Clearinghouse* No. 52, 140 No CV 98-7204 (CPS) (E.D.N.Y. Dec. 23, 1998) (foreclosure sale enjoined; indigent elderly homeowners not required to post bond); *Thomas v. F.F. Fin., Inc.*, 1989 U.S. Dist. LEXIS 3696 (S.D.N.Y. Apr. 11, 1989) (preliminary injunction granted against foreclosure where homeowner-plaintiff alleged *she had* rescinded, the creditor-defendant had failed to tender back to borrower fees and costs collected as required, and mortgage was null and void; court held no bond was required, and therefore there was adequate security against any damages arising from injunction for creditor defendant even if it prevailed on the merits).The Truth in Lending Act ("TILA") gives a consumer the "right to rescind" a transaction by "notifying the creditor, in accordance with the regulations … of his intention do so." 15 U.S.C. § 1635(a)

The regulations, in turn, provide that, "[t]o exercise the right to rescind, the consumer shall notify the creditor" in writing. 12 C.F.R. § 226.23(a) (2).Regulation Z, as adopted by the Federal Reserve Board and as republished by the Bureau, specifies that "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. §§ 1026.15(a) (2), 1026.23(a)(2). Under Section 1635 of TILA, a consumer has a right to rescind certain home mortgages. *Id.* § 1635(a)

Rescission unwinds the transaction, and returns the parties to their pre-mortgage transaction status. *See JAMES M. FISCHER, UNDERSTANDING REMEDIES 730 (2d ed. 2006). Rescission is a conceptually distinct remedy from damages, which are based on affirmance, or acknowledgment, of a valid contract. Id.*

16

TILA rescission is a non-judicial remedies same as non-judicial foreclosure. They are both done with letters and are effective by operation of law. The banks ignore the Rescission letter at their peril, they fail to file a lawsuit on the behalf of a real creditor with standing at their peril, and they fail to act **within 20 days** at their peril. Any other ruling would not only violate the law of the land, it would open the door to borrowers being able to "ignore" the notice of default and notice of substitution of trustee, and notice of sale despite a finite time limit to challenge the actions which by a specific statutory scheme require action by the borrower within a narrow time window. The rules are the same

TILA Rescission intentionally removes the "paperwork" as any basis upon which any party can seek relief. In no state of United States that the Plaintiffs are aware of, can one obtain any ruling or relief based upon a void instrument. Rescission is defined as "[a] party's unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach." *BLACK'S LAW DICTIONARY (10th ed. 2014)*. It is also defined as "an agreement by contracting parties to discharge all remaining duties of performance and terminate the contract." *Id.* In short, rescission is accomplished either unilaterally or by mutual agreement of the parties. *Id.* Congress enacted Section 1635 to protect consumers from unfair and deceptive lending practices.

When a consumer exercises a valid right of rescission under § 1635, the transaction is cancelled. The effect of cancellation is governed by § 1635(b): The consumer "is not liable for any finance charge or other charge, and any security interest given by the obligor, including any such interest arising by operation of law … becomes void upon such a rescission." 15 U.S.C. § 1635(b)(2011); 12 C.F.R. §§ 1026.15(d)(1), 1026.23(d)(1). *See also Family Fin. Servs. v. Spencer*, 677 A.2d 479 (Conn. App. Ct. 1996) (creditor's failure to accept rescission notice nullified the mortgage, barring creditor from foreclosure); *Yslas v. D.K. Guenther Builders, Inc.*, 342 So. 2d 859 (Fla. Dist. Ct. App. 1977) ; *Willis v. Friedman, Clearinghouse* No. 54,564 (Md. Ct. Spec. App. May 2, 2002); *Community Nat'l*

*Bank & Trust v. McClammy,* 525 N.Y.S.2d 629 (App. Div. 1988) (if rescission claim established, would be defense to a foreclosure on a nine year- old mortgage).

Section 1635(b) also governs the process of cancellation: Within twenty (20) calendar days after receipt of a notice of rescission, the lender must return any money or property given in connection with the transaction and take all necessary action to reflect the termination of the security interest. 15 U.S.C. § 1635(b); 12 C.F.R. §§ 1026.15(d) (2), 1026.23(d)(2).

When the lender has performed its obligations, the consumer must tender the money or property to the lender or, if that is impracticable or inequitable, must tender the property's reasonable value. 15 U.S.C. § 1635(b); 12 C.F.R. §§ 1026.15(d)(3), 1026(d)(3).

The alleged agents of holder of void DOT repeatedly failed and refused to provide any substantive documentation regarding the current purported owners of the mortgage, as well as the status and operation of the Trust, claiming that all such information is confidential and proprietary. The Decision of Bankruptcy Court in Dismissing Appellant's Case without adjudication of Appellant's TILA Claims was erroneous on the merits for several reasons. It is contrary to the provisions of TILA and Regulation Z. It also fundamentally misunderstands the importance of the unique nature of rescission and its prompt application and enforcement, thwarting Congress's intent to establish a private, non-judicial remedial process. "Section 1635 is written with the goal of making the rescission process a private one, worked out between creditor and debtor without the intervention of the courts." *Belini v. Washington Mut Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005) ("[S]ection 1635 is written with the goal of making the rescission process a private one, worked out between creditor and debtor without the intervention of the courts."); *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1322 (9th Cir. 1998) ("When a party gives notice of rescission, it has effected the rescission, and any

subsequent judicial proceedings are for the purpose of confirming and enforcing that rescission.").

The US Supreme Court further rejected all of the lender's arguments that TILA should be interpreted as requiring a consumer borrower to file a lawsuit in order to rescind a qualifying mortgage loan. *See Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015)(emphasis added). Finally, the Court's decision arguably resolves the debate over how to effectuate, or accomplish, rescission under Section 1635. Among the arguments for requiring the filing of a lawsuit is that the TILA rescission mechanism looks more like rescission-in-equity, which requires a judicial declaration of rescission, and less like rescission-at-law, which is accomplished privately by the parties upon tender of the rescinding party. *Jesinoski* is clear that "rescission is affected" by a consumer borrower's written notice to the lender that he intends to rescind. *Jesinoski*, 135 S. Ct. at 792

As a practical consequence of this ruling, a lender now bears the burden of filing a lawsuit to contest the borrower's ability to rescind. In short, any questions about the mechanics of TILA rescission should be resolved. When consumers have a right to rescind under § 1635 and "elect to rescind, the mechanics of rescission are uncomplicated." *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir. 2007)

Again, Section 1635(a) and Regulation Z specify that consumers exercise their right to rescind by providing written notice to their lenders. Section 1635(b) entitles consumers to relief when they exercise a valid rescission right. And § 1635(f) limits the period of time consumers have to notify their lenders in accordance with subsections (a) and (b) and Regulation Z. This statutory scheme is

consistent with the historical understanding that rescission may be achieved unilaterally upon notice to the counterparty to a contract.

Unless corrected by this Court, the Bankruptcy Court ruling may have significant unintended and undesirable consequences, including encouraging unnecessary litigation by consumers. The decision also frustrates basic principles of administrative deference — effectively delaying and possibly abrogating the enforcement of a federal regulation by exposing the Debtor to unwarranted, wrongful and illegal foreclosure proceedings and further litigation.

Appellant filed Bankruptcy Chapter 13, filed Schedules, Chapter 13 plan, and proposed for 60 months and paid $ 3,366.76 per month to chapter 13 trustee fundamentally seeking discovery and adversary procedures to enforce the rescission, a declaratory judgment terminating the security interest in her home, and damages, all before any adverse determination. In sum, the economic and financial interests of alleged "Nominal lender's" are simply not in jeopardy -- but rather has been protected through increased fair market value, as Debtor has remained in possession and has continued to maintain the property as well as the Nominal Creditors also having been previously reimbursed by insurance over and above the note value. Accordingly, Appellant should be permitted to pursue his chosen remedy in Bankruptcy without possibly unnecessarily exposing him to further unjustified and unwarranted foreclosure proceedings by the unsecured alleged creditors through the requirement of his refiling of the bankruptcy.

No foreclosure notice or Notice of Default was served to the Appellant, by the attorney, Samuel I. White PC,(SIWPC) and its alter ego Trustees, Samuel I. White PC,(SIWPC) representing Wells Fargo and ASC or the falsely appointed substitute trustee, SIWPC.         Appellant Syed Askri filed his Voluntary

Petition under Chapter-13 Bankruptcy on April 15, 2015, Case No 15-11267-RGM "Petition" [Dkt.1] to save his primary residence, from *illegal* foreclosure, from the unsecured alleged creditors, holding *void* instrument, which does not give them authority to act. Appellant and his wife disputed the debt and repeatedly requested *Accounting* because their mortgage payments were *not* being accounted towards the Appellant's mortgage account. [App. Desig.6 and 6A] Appellant claims that he is unaware of any reason US Bank N.A, who is Terminated Trustee of the "MBS TRUST", through Wells Fargo and ASC or Appellees are asserting rights under the Note or Deed of Trust, (DOT) and that Appellant has never had any prior dealings with them. Appellant also claims that, Appellees are not the beneficiary of the Note or Deed of Trust, and thus they have no authority to foreclose on the property, based on a void DOT. Appellant's Dispute and cease & Desist notices repeatedly questions whether US Bank, Wells Fargo and ASC have any interest in the Note.

Moreover, during the Court's hearing, counsel for Appellant argued that Wells Fargo Bank N.A, ASC and Fst Tennessee are not the owner of Appellant's debt obligation. These allegations make a *valid* claim that Appellees are not the beneficiary of Appellant's debt obligation, and therefore any foreclosure by Appellees is invalid. Such a claim, if proven true, is undoubtedly entitled to equitable relief. *See generally Wills v. Chesapeake W. Ry. Co.*, 178 Va. 314, 16 S.E.2d 649 (1941) (a court sitting in equity may set aside an invalid foreclosure). Appellant's Dispute and cease & Desist notices allege that numerous entities have claimed ownership of the Note. The Bankruptcy Court *erred* and failed to find that these allegations, taken as a whole, sufficiently suggest that Wells Fargo Bank N.A, ASC and Fst Tennessee are not the beneficiary or owner of the debt obligation. *See Cox Cable Hampton Roads*, 242 Va. at 397, 410 S.E.2d at 653

21

Appellant was not provided the accountings of his mortgage payments and the debt was not verified and validated by the Wells Fargo Bank N.A, ASC and Fst Tennessee or the entities acting on their behalf. *Under Virginia law*, an *accounting* is a form of equitable relief which is available upon order of a court in equity. *McClung v. Smith, 870 F. Supp.* 1384, 1400 (E.D. Va. 1994) This fundamental equitable remedy has long been available to require trustees [alleged trustee US Bank N.A and holder of void instrument due to rescission] or agents [Wells Fargo Bank N.A, ASC and Fst Tennessee] to account for their actions in dealing with the funds of beneficiaries or principals. *See Bain v. Pulley*, 201 Va. 398, 111 S. E. 2d 287 (1959).

Did the Bankruptcy Court err or abuse its discretion in the application of the standards applied in a judicial proceeding, when *without* contradictory evidence, it accepted, trustee's objection to Debtor's ***more than 100%*** Funded Plan, that was based on hearsay and lack of personal knowledge; thus denying the debtor, the protections and safeguards of a bankruptcy filing;   Whether the Bankruptcy Court err or and abused its discretion in finding Debtor's plan to be filed in bad faith, even though *good-faith* payments of $ 3,366.76 per month were made from April-July 2015, post rescission,  (04 months a total of $ 13,467.04 still with trustee, and trustee has not refunded these back to Appellant) Appellant was regularly paying and would have paid $ $26,934.08 as of filing this brief and considering many *other* similarly and/or more *underfunded* plans that have been approved and/or *repeatedly* continued with the Chapter 13 Trustee's *consent*, in various other Chapter 13 cases filed in the Eastern District Virginia Alexandria Division *without* such bad-faith finding. In the past the Chapter 13 trustee have provided unnecessary help to his *girlfriend* who used to file chapter 13 plan based on bad faith and those plans were approved and or continued un-necessarily with the aid of Chapter 13 trustee Mr. Gorman, who could have recused from those chapter 13

22

underfunded plans. Chapter 13 Trustee Mr. Gorman and or his counsel *failed* to rebut Appellant's allegation and as such conceded that the Appellant's *assertions* are correct. Appellant avers that Chapter 13 Trustee was acting in a bad faith, looking for the personal interests of his girlfriend in this case. See supra pg.1-2 (See also Appellant Brief pg.5-6, and 9-10)

VI.   *Bankruptcy Court incorrectly denied 100% Funded Plan without leave to amend, Appellant met his burden of Proof, and did have verifiable Income. Trustee wrongly alleges that the Debtor lacks regular Income and the Petition is not filed in good faith.*

At the end of 2014, the Debtor expanded his business to 3 full-time *Kiosks* that now generate income of over $4,000.00/month from each. However, the Debtor's plan in the current case takes into consideration the additional income from the new business and children contribution. Debtor has 3 unmarried children aged 26, 22, and 18 all of whom live at home. Two children are already contributing $3,000.00 per month to the family. Appellant provided proof to Bankruptcy Court and Trustee

Moreover, the Debtor and wife have significantly increased their Kiosk business and now sell cell phone accessories, sun glasses, and other personal accessories. Each of the Kiosks now generates over $4,000/month and such increase in income will be reflected in the 2015 tax returns (yet to be filed in 2016). Debtor is also attempting to rent the basement to have additional income. Therefore, the family is able to combine their resources to save their home.

Moreover, the Debtor has the capability to sustain regular mortgage payments and the mortgage arrearage claims. As stated above, the Debtors plan proposes to pay $202,005.60 in total with payments for 60 months. There are discrepancies in the Proof of Claims filed in this matter, for which Debtor will file a motion to seek court's permission to file the objections to POCs. As such, the Debtor's plan proposes to adjust his monthly payments after all corrections and modifications are made in the accounting.

Appellant paid and submitted to Trustee following Payments as shown below;

| Date | Check No. | Amount | Remarks |
|------|-----------|--------|---------|
| 5/12/15 | 528 | $2,200.00 | Deficient Payment mailed by check 504 for $ 2,333.52 |
| 6/11/15 | 557 | $2,200.00 | Deficient Payment mailed by check 504 for $ 2,333.52 |
| 7/7/15 | 495 | $3,366.76 | Cashed by Chapter 13 Trustee's office 7/10/15 |
| 7/30/15 | 504 | $2,333.52 | To cover the deficient amount for first two months |
| 8/1/15 | 530 | $3,366.76 | Cashed by Chapter 13 Trustee's office 8/10/15 |
| TOTAL | 528,557,495,504,530 | $13,467.04 | $ 11,367.04 covers the first 04 payments of the Plan.[ 3,366.76x4=13,467.04[7] |
| | | | |

Appellant's amended Chapter 13 plan proposes to pay $3,366.76 for sixty (60) months. The total of plan payments is $202,006.10 and consists of $00.00 in attorneys' fees.

a) Trustee's commission: $20,200.60 [Appellant worked this amount as 10% of Plan Payments, but the actual trustee's commissions is 1.5% as admitted by trustee in open court. See Appellant's Brief pg.4, 12, and 19]

b) Unsecured creditors: $ 0.00 [Appellant did not have any unsecured creditors]

---

[7] This amount is still with the trustee.

c) US Bank N.A - $104,515.97[8] [Plan covers 100% payment] First Tennessee - $74,855.36[9][Plan covers 100% payment; trustee was giving instructions to BWW attorney how to file objection to Plan. See Appellant's assertion on pg. 9 of Appellant Brief and Appellee Trustee and or his counsel failed to rebut Appellant's allegation and as such conceded that the Appellant's assertions are correct ]

d) LVE III HOA - $ 4,870.58 [ HOA was 100% funded]

## VII.    *Incorrect Proof of Claims filed as instructed by Trustee to please his girlfriend*

A properly filed POC is prima facie evidence as to the claim's validity (as to the facts alleged therein). Fed R. Bankr. P. 3001(f). In the Debtor's wife case, it was held that M &T bank is the creditor.  As the actual owner, M &T Bank is a necessary party under Rule 19(a) (1) (B) (i) but it is not before this Court.

It is axiomatic that in federal courts a claim may only be asserted by the real party in interest. *In re Smith,* 41 B.R. 622, 628 (Bankr E.D.Va. 2008)  Here the real party in interest, M&T Bank, is not identified as the creditor in the POC filed by First Horizon Bank, which lists itself as the Creditor.   And if First Tennessee is the servicer and is able to file a POC,[10] it should allege accurate facts

---

[8] The Amount on POC # 2.1 calculated incorrectly on the face of the document.  See FN 2,3 &4
[9] The accountings attached with the POC # 1.1 filed by the First Tennessee is incorrect. See FN 2,3 &4
[10] Creditor is M&T Bank but is not listed in the POC filed by First Horizon Bank.  The debtor will be objecting to the POC filed as it contains incorrect calculations on its face, and doesn't

therein. Here, BWW Law Group signed the POC as "Attorney for Claimant" rather than the real party in interest in violation of Bankruptcy Rule 3001(b).

Along with the wrong party listed in the First Tennessee's POC, the amounts in POC 1.1 and 3.1 are incorrect. The Trustee having *fiduciary* duties towards both the creditors and Debtors failed to take notice of the incorrect filings and accounting by the US Bank and First Horizon Bank. There are at least 3 wrongly calculated and filed arrearage claims (First Tennessee Bank POC 1.1, LVE III HOA POC 2.1, [11] and US Bank POC 3.1.) Appellant's payments will cover the 100% arrearages in this case.

The POC 1.1 filed reflects that the annual interest rate is 3.00% from 6/3/2012. As such, Appellant is unclear how a 3% interest for $226,675.00 loan for 34 months is calculated at $566.80/month. The total interest payment for such loan amount amortized for 34 months actually calculates to $6,962.59, which is $204.76/month. Further, $226,675.00 amount amortized for 15 years at 3% interest rate equals $1,565.38/month. However, the POC 1.1 appears to calculate it to be $2,258.28/month.

The Appellant has attempted unsuccessfully to get answers to such discrepancies/ questions in the charges and payment in his loan. However, to

___

give Debtor notice as to how the alleged monthly payment due was determined or how the arrears were calculated.

[11] HOA charged attorney fees for filing the POC as $ 267.00 on 03/7/2014 and again charged $ 267.00 as attorney's fees for amending the same POC. There are some more fees charged for without proper explanation in violation of FDCPA

date, Appellant is unaware how the monthly payments were charged and what has been paid on his loan. Considering the positive expected financial changes in the Appellant's income, the Court should allow the Appellant an opportunity to seek permission to file objection to POCs. In the earlier requests, the Appellant unsuccessfully attempted to get a modification and submit repeated requested documents that kept becoming missing

## VIII.    *Appellant filed the Chapter 13 Bankruptcy Petition in good faith*

The main purpose of bankruptcy is to give debtors a fresh start from oppressive debt by either liquidating the debtor's assets or by allowing the debtor to pay at least some of the debt over a specific period of time. The good faith is the debtor/Appellant's honest intention of using the bankruptcy process to get a fresh start from oppressive debts which were incurred either because of circumstances beyond his control, such as medical issues, the loss of employment, or decreased business, or because the debtor did not manage his finances well. The debtor did not borrow any money that he did not intend to pay back.

In this case, the Appellant and his family are simply attempting to manage their debts and keep their family home. They have unsuccessfully attempted to get clarifications about their payments and credits by requesting using qualified written request and debt dispute letters. As stated above, the POC filed do not

clarify how the payments have been calculated in this case. The mortgage arrears are also incorrectly calculated.

IX.    ***The United States Supreme Court has unanimously effectively endorsed the Validity of Appellant's Notice of Rescission; opposition argument is mistaken based on misguided assertions.***

The recent unanimous United States Supreme Court decision, *Jesinoski v. Countrywide* Home Loans, Inc., 574 US ___ (2015) is a major sea change in the law of Rescission as applied in the Fourth Circuit underscores and fully supports the appropriate Notice of Rescission action taken by Debtor. (*See also*. On February 23, 2015 US Supreme Court issued two additional decisions in *Keiran v. Home Capital, Inc*, [Dkt. 13-705] and *Takushi v. BAC Home Loans Servicing, LP, [Dkt. 13-884]*. In both cases, the petition for a writ of certiorari was granted, the judgment of the lower court was vacated, and the cases were remanded to the United States Court of Appeals for the Eighth and Ninth Circuit respectively for further consideration in light of *Jesinoski v. Countrywide Home Loans*.)

The Nominal Creditors and all of the identifiable transferees to date are fully on Notice of Rescission will not be prejudiced by allowing the bankruptcy proceeding to continue, because they will get paid through chapter 13 trustee after the approval of the plan. In particular, in the course of the Chapter 13 proceeding, Debtor has mailed and provided a copy of the Rescission Letter to each of the subsequent transferees and owners of the mortgage, as identified by Debtor's

Forensic mortgage analyst — all of whom have been listed as Parties in the Bankruptcy proceeding from the beginning. Moreover, Wells Fargo Bank N.A, ASC and Fst. Tennessee are servicers had the continuing duty and obligation of informing and advising all such transferees of such action.

Accordingly, all of the Parties to whom the mortgage has been transferred have been and are on full legal notice that the Debtor properly filed a Notice of Rescission. They are all on full notice of their respective legal jeopardy. See *Family Fin. Servs. v. Spencer*, 677 A.2d 479 (Conn. App. Ct. 1996) (creditor's failure to accept rescission notice nullified the mortgage, barring creditor from foreclosure); *Yslas v. D.K. Guenther Builders, Inc.*, 342 So. 2d 859 (Fla. Dist. Ct. App. 1977); *Willis v. Friedman*, Clearinghouse No. 54,564 (Md. Ct. Spec. App. May 2, 2002); *Community Nat'l Bank & Trust v. McClammy*, 525 N.Y.S.2d 629 (App. Div. 1988) (if rescission claim established, would be defense to a foreclosure on a nine-year-old mortgage)

As Appellant has properly and legally rescinded the mortgage loan the alleged creditors and now holder of void DOT owe Appellant an accounting and full reimbursement of all funds paid to them by the Appellant. Appellant also has additional claims and offsets against the alleged mortgage loan creditors. The bottom line is that Appellant does not have any obligation to make any payment, in bankruptcy through a Chapter 13 Plan, or otherwise, to the "Nominal lender", post

rescission, but this Appellant proposed $ 3,366.76 per month for 60 months to Chapter 13 trustee in a good faith effort to resolve this issue.

Of critical relevance and significant importance is the recent landmark *Jesinoski* decision of the United States Supreme Court. The Court ruled that the requirements of TILA must be strictly construed --- apart from any common law notions of fraud or rescission. The Court emphasized that TILA rescission was a unique statutory remedy and that the Common Law Right of Rescission is not applicable to the explicit and exclusive statutory remedy that is TILA Rescission.

It is important to note that this US Supreme Court decision has materially affected the law of Rescission in the Fourth Circuit and, as well as elsewhere. Accordingly, Appellant had now had his Notice of Recession judicially endorsed and believes that upholding the dismissal of his case at this time would be both unfair and unreasonable under all of the circumstances.

As submitted to the Bankruptcy Court, the statutory framework for Rescission under TILA is clear.

*"A homeowner's issuance of a Notice of Rescission has two fundamental effects: (A) the Mortgage/DOT and Note are nullified by operation of law (the mortgage company is obligated to send a satisfaction of Mortgage/DOT and canceled Note to the borrower after rescission, although the unsecured debt remains), and, (B) that in order to contest the Rescission, the Lender must file a lawsuit challenging said Notice within Twenty (20) days of receipt of the Notice. In appellant's case the 20 days window is closed now and rescission is self-imposed by operation of law.*

*Alternatively, within the statutory twenty (20) day period, the Lender can accept the Rescission and promptly return all funds paid by the homeowner on the mortgage, in exchange for a tender from the homeowner of the property, subject to other claims and/or offsets. It is not the borrower that must tender payments. The lender must tender payment, disgorgement, and reimbursement for every penny paid by the borrower in connection with the loan, including closing costs and all payments whatsoever thereafter.*

*There are no other alternatives or exceptions set forth in the federal statute.*

*In this case, Wells Fargo Bank N.A, ASC, BOA and Fst. Tennessee did not accept nor timely and legally challenge the Notice of Rescission within the mandated twenty (20) day statutory period and, in fact, committed another violation of TILA[12]. That deadline expired 10 months ago without any action whatsoever by Wells Fargo Bank N.A, ASC, BOA and Fst. Tennessee in compliance with the mandated requirements of the statute. As a result they have permanently waived all of their defenses and claims and they, as well as any of the other transferees of the Deed of Trust, Mortgage and/or Note, are now simply unsecured creditors.*

*As the subject Mortgage and Note did not survive or exist after receipt of the defaulted Notice of Rescission, any action to enforce or collect under their terms, or the Deed of Trust, including foreclosure action, is void, ab initio and the alleged mortgage creditors cannot assert any personal or subject matter jurisdiction over the Debtor, the Appellant in this case.*

*There are fundamental constitutional due process rights in jeopardy, if Appellant is not permitted to proceed under the original and full protection of the Bankruptcy Court from further*

---

[12] Violations of the rescission provisions are among the violations which themselves give rise to statutory and actual damages. 15 U.S.C. § 1640(a) (text following subparagraph (a)(4)). *See, e.g., Buick v. World SavBank*, 2008 U.S. Dist. LEXIS 48801 (E.D. Cal. June 11, 2008) (finding lender's failure to honor rescission notice "a distinct and actionable violation"); *Brannon v. Bridge Capital Corp.*, 2008 U.S. Dist. LEXIS 41949 (M.D. Ala. May 27, 2008) (awarding statutory damages for failure to make disclosures and for failure to honor rescission notice); *Ebron v. First Franklin Fin. Corp.*, 2008 Bankr. LEXIS 917 (Bankr E.D. Va. Mar. 25, 2008) (denying lender's motion to dismiss statutory damages claim for failure to respond to rescission notice*); Lippner v. Deutsche Bank Nat'l Trust Co.*, 544 F. Supp. 2d 695 (N.D. Ill 2008) (finding assignee who failed to respond to proper rescission notice liable for statutory damages); *In re Ameriquest Mortg. Co.*, 2007 U.S. Dist. LEXIS 45676 (N.D. Ill. June 25, 2007) (denying motion to dismiss statutory damages claim when lender failed to respond to rescission notice). *But cf. Dawson v. Thomas*, 2008 Bankr. LEXIS 1074 (Bankr D.D.C. Apr. 9, 2008) (granting rescission but denying claim for statutory damages for failure to honor right of rescission; creditor not obligated to rescind until court orders creditor to do so; only notice of rescission was filing of complaint).

*foreclosure proceedings being instituted by the unsecured creditors based on the void DOT until a final judicial resolution is reached in the Bankruptcy proceeding.*

Appellant's TILA rescission was uncontested by the alleged creditors et al in the 20-day time frame allowed under the statute to respond, and they are subsequently time barred from contesting its effectiveness. As such, Appellants' rescission is effective by law as rescission was explained by a unanimous U.S. Supreme *Court. See Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790 (2015). TILA RESCISSION is a very specific statutory remedy that sets forth a procedure in which the "borrower" sets everything in motion by sending a Notice of Rescission THEN the parties on the other side have a choice --- perform the statutory duties or within 20 days bring suit to vacate rescission, which IS LAW until some other operation of law vacates it. The US Supreme Court is the highest court, and its decisions establish the law for the country.

Appellee Trustee's Brief didn't disclose the recent TILA ruling as controlling law and continued to use old TILA precedent. *See Jesinoski et ux. v. Countrywide Home Loans Inc., et al.*[13] The natural reading of [§ 1635(b)] is that the security *interest becomes void* when the obligor exercises a right to rescind. Alleged creditors over here failed to comply with all of the requirements of TILA in

---

[13] On February 23, 2015 *US Supreme Court issued two Judgments in Keiran v. Home Capital, Inc*, Dkt. 13-705; and *Takushi v. BAC Home Loans Servicing, LP, Dkt. 13-884,;* petitions for a writ of certiorari is granted. The judgment is vacated, and case is remanded to Eighth Circuit and Ninth Circuit for further consideration in light of *Jesinoski v. Countrywide Home Loans, 574 U. S. _ (2015).*

connection with this loan and intentionally _closed_ the 20 days window. In *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65 (4th Cir.1983), the court held that the provisions of TILA must be "absolutely complied with and strictly enforced." In *Jesinoski,* the Supreme Court said that _like_ it or _no_t, notice of rescission is effective _by operation of law_ when mailed and nothing else is required to make it effective. The Court specifically said that TILA rescission is different than the statutory rescission in the Truth in Lending Act. The *Jesinoski* Court said there is no distinction between _disputed_ and _undisputed_ rescissions --- they are _both_ effective upon mailing by _operation of law_. That became the law of the land. Defendants are now holder of void DOT and unsecured note, and without a valid DOT encumbering the subject property, Appellant challenges any power stemming from such voided DOT. Appellant is specifically in class of persons this statute was designed to protect, and TILA is strictly a liability statute liberally construed in favor of consumers, and as a direct, proximate, and foreseeable result of appellee's actions, Appellant is subject to loss of property and loss of use of property and other damages as a result of appellee's actions. *See also See, e.g., In re Regan*, 439 B.R. at 527 (holding that when a lender has violated TILA provisions, courts impose strict liability regardless of the nature of the violation or the creditor's intent and that the court has no discretion to decline rescission "because of the equities of the case"); *See, e.g., Newton v. United Cos. Fin.*, 24 F.

Supp. 2d 444 (E.D. Pa. 1998) (acknowledging that TILA is a strict liability statute with the result that a lender that violates its provisions is liable regardless of whether lender's conduct was intentional, negligent, or inadvertent).

### X.    *Trustee Appellee is misguided on the TILA Rescission*

Trustee Appellee falsely states, that " Debtor's contention that by merely giving his mortgage lenders notice that he intends to exercise his right to rescind their mortgage note................ has in fact been rescinded." (See Trustee's Brief at pg. 10) *Jesinoski 135 S Ct at 791.* The Court had to determine *when* rescission actually occurred in order to answer that question:

> The language of [*the statute*] leaves *no* doubt that rescission *is* effected when the borrower *notifies* the creditor of his intention to rescind.

*Id.* Thus, the *Jesinoski* holding rested on the Court's determination, as a matter of statutory interpretation, that *written notice* actually affects the rescission. A number of federal appellate courts, prior to Jesinoski, distinguished *between* notice of intent to exercise the rescission right and the rescission itself. *See e.g., Gilbert v. Residential Funding, LLC*, 678 F.3d 271, 277 (4th Cir. 2012) ("We must not conflate the issue of whether a borrower has exercised her right to rescind with the issue of whether the rescission has, in fact, been completed and the contract voided.") ; *accord Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir.

2003). That distinction, however, cannot survive the Court's clear statement "rescission is *effected*" at the time of notice. *Jesinoski*, 135 S Ct. at 792

The Supreme Court implicitly rejected opposition's argument when it declared "*rescission is effected" at the time of notice*, without regard to whether a borrower files a lawsuit within the three-year period. *Jesinsoki*, 135 S. Ct. at 7 92; *see also Sherzer v. Homestar Mortg. Servs.*, 707 F.3d 255, 258 (3d Cir. 2013) (text of TILA and implementing regulation "support [] the view that to timely rescind a loan agreement, an obligor need *only* send a valid notice of rescission"); *Lippner v. Deutsche Bank Nat'l Trust Co., 544 F. Supp.* 2d 695, 703 (N. D. Ill. 2008) (plaintiff's timely written notice under TILA entitled him "as a matter of law . . . to rescission"); *Alexandra P. Everhart Sickler, And the Truth Shall Set You Free*: Explaining Judicial Hostility to the Truth in Lending Act's Right to Rescind a Mortgage Loan, 12 Rutgers J.L. & Pub. Pol'y 463, 481 (Summer 2015) ("As a practical consequence of [the Jesinoski] ruling, a lender now bears the burden of filing a lawsuit to contest the borrower's ability to rescind.") This reading of *Jesinoski* does not, as opposition asserts, amount to holding "the process of unwinding a loan is automatic and complete upon a borrower's written notice of rescission." After the ASC, Wells Fargo and First Tennessee received Appellant's notice of rescission, it had *two* options. It could have begun unwinding *process* by returning Appellant 's down payment or earnest money and taking action to "reflect

the termination of [the] security interest," pursuant to 15 U.S.C. § 1635(b). Those actions would, in turn, have triggered Appellant's obligation to ***tender*** a payoff of the ***remaining*** loan amount. *See Lippner, 544 F. Supp*. 2d at 702 ("The issue of whether [the borrower] can satisfy her rescission obligations [does] not arise until [the lender] ha[s] completed [its] obligations pursuant to TILA.") In the alternative, ASC, Wells Fargo and First Tennessee could have filed a lawsuit to dispute Appellant's right to rescind the loan within 20 days [now that window is closed]. Appellant alleges ASC, Wells Fargo and First Tennessee *did* neither of those things. The question here is what happens when the unwinding *process* is not completed and neither party files suit within the TILA statute of limitations. In such circumstances *Jesinoski **directs*** that the rescission and voiding of the security interest are effective as a matter of law as of the date of the notice. When a court interprets a statute, it is not "retroactive" to apply the decision to transactions already entered into, because the court is determining what the law has always meant. As the Supreme Court explains,

> [W]hen this Court construes a statute; it is explaining its understanding what the statute has meant continuously since the date when it became law. . . . Thus, it is not accurate to say that the Court's decision ... 'changed' the law that previously prevailed . . . when the case was filed. Rather, given the structure of our judicial system, [a Supreme Court] opinion [interpreting a statute] finally decide[s] what [the statute] had always meant and explain[s] why the Courts of Appeals have misinterpreted the will of the enacting Congress.

*Rivers v. Roadway Exp., Inc., 511 U.S. 298, 313 n12 (1994)*

XI.   *Appellant will tender, when required, Court never asked for or determined Appellant's capability to tender. Trustee's assertions are false*

Chapter 13 trustee wrongly concluded that the amount Appellant owed to the alleged creditor for tender is $ 245,946.63 to M&T Bank and $ 506,339,44 to US Bank N.A. Trustee failed to submit any proof how he calculated these alleged amount repeatedly disputed by the Appellant. However, to come to such conclusion, the Trustee ignored that the loan was rescinded in 2014. Under TILA, post rescission, there are to be no additional charges or fees added. Moreover, the creditor is responsible for *statuary*, *actual*, *attorney's fees* and *other* damages accrued for each TILA violation post rescission. Thus, calculating and adjusting such damages could arguably lower the total amount owed on the loan, as the failure to honor a rescission required is a separate violation, giving rise to a separate claim for damages.

The Fourth Circuit describes the effect of rescission as follows:

> The "effects of rescission," as described in clause (d) of § 226.23, are that rescission (1) voids the transaction, including the security interest created by it; (2) entitles the borrower to a refund of all amounts, including finance charges, paid in connection with the transaction; and (3) requires the borrower, after the lender has carried out its obligations in rescission, to refund any money or property that the borrower received as a result of the transaction. See 12 C.F.R. § 226.23(d)

*Watkins v. SunTrust Mortgage Inc.* 663 F.3d 232 (4th Cir. 2011)

The *Watkins* court also explains that after "any consumer transaction" is rescinded:

TILA provides that (1) the borrower is relieved of any obligation to pay a "finance or other charge"; (2) the security interest created by the transaction becomes void; and (3) upon the lender's performance in returning money paid by the borrower and in voiding the security interest, the borrower must return to the lender any money paid to the borrower.

As such, the Debtor's obligation to pay back the money follows the creditors obligation to first return all the fees it received from the debtor.

> Consistent with the common understanding of rescission, the creditor must give back all fees received from the borrower and undo the security interest given with respect to the loan, and the borrower in turn must return the money it received. The parties are thus returned to the *status quo ante*.

*Id.*

The *Watkins* court also held that when an entire transaction is rescinded, however, the status quo before the transaction must be restored, including, the reinstatement of a prior loan. *Id.*

In a dissenting opinion, Judge Wynn further explained TILA as follows:

> It is important to point out that although this Court, in *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007), suggested that the Truth in Lending Act should be "reasonably construed and equitably applied," that holding did not and indeed could not overrule the binding precedent set by this Court in *Mars*. See *Am. Mortg. Network, Inc.*, 486 F.3d at 819 n 4. . . . .

> In *Mars*, this Court held that the Truth in Lending Act and its regulations must "be absolutely complied with and strictly enforced." Like our holding in *Mars*, other circuit courts have also required that the Truth in Lending Act and its regulations be absolutely complied with and strictly enforced. See *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) ("Truth in Lending Act does not easily forgive 'technical' errors.") (Quotation marks omitted); *Smith v.*

*Fid. Consumer Disc. Co.*, 898 F.2d 896, 898 (3rd Cir. 1990) ("Once the court finds a violation, no matter how technical, it has no discretion with respect to liability.") (quotation omitted); *Semar v. Platte Valley Fed. Sav & Loan Ass'n,*791 F.2d 699, 704 (9th Cir 1986) ("Technical or minor violations of [Truth in Lending Act] or Reg. Z . . . impose liability on the creditor and entitle the borrower to rescind."); *Williamson v. Lafferty*, 698 F.2d 767, 768-69 (5th Cir. 1983) (holding that the failure to fill in rescission expiration date violates the Truth in Lending Act).

*Id.*

In the instant matter, the trustee cited to *Shelton* to state that the law of the Fourth Circuit is that borrower must have the ability to tender the rescission amount within a reasonable time. The Court was of the opinion that the Debtor and her husband did not have the ability to tender the rescission amount. However, the *Shelton* case is distinguishable to the case at hand. In the dissent, Judge Wynn explained that:

> *Shelton* was an action concerning the procedural requirements for exercising the right to rescind. The issue in Shelton was whether the lender had an obligation to return the borrower's property per the Truth in Lending Act deadlines after the lender learned that the borrowers were unable to tender the loan proceeds to the lender. We affirmed the grant of summary judgment in favor of the lender because "[o]nce the trial judge . . . determined that [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate . . . . [And, consequently,] [t]he trial court properly exercised its discretion in denying rescission." *Shelton*, 486 F.3d at 821

If the borrowers are to be put back in the position they were in prior to the loan, the funds that they paid, and the damages that they incurred would first be restored prior to their obligation to tender back the yet to be established tender amount. Therefore whether the Appellant and his wife are able to tender the proceeds cannot be decided at this stage. Appellant and his wife are willing to tender the proceeds determined after adjusting their payments and damages of repeated violations of TILA.

Recently, the Supreme court has held that the borrower simply needs to serve a rescission notice to exercise the 3-year right of rescission, and that returning the lender's funds, tender, is not a strict condition precedent to enforcing a rescission notice. *Jesinoski v. Countrywide*, 135 S.Ct. 790 (2015). *Jesinoski* court also held that Section 1635(a)'s unequivocal terms—a borrower "shall have the right to rescind . . . by notifying the creditor . . . *of his intention to do so*" (emphasis added)—leave no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. *Id.*

The Bankruptcy Court's Order was not in the interests of justice for the Bankruptcy judge to dismiss the Chapter 13 proceeding at this time based on insubstantial allegations and mere administrative issues and on trustee's personal conflicts of interests and biased attitude towards Debtor, his non filing wife due to trustee's personal conflicts of interest, where Chapter-13 trustee's girlfriend played a role and trustee acted in bad faith.

Appellant proposed $ 3,366.76 per month to Chapter-13 Trustee, which Debtor almost paid $ 13,467.04.00 and the amount is still with the chapter 13 trustee, who has not returned the amount to Appellant since last 60 days. It is unfair to subject Appellant to another Chapter 13 filing *ab initio*, with the additional attendant costs and delays, when he is simply trying to prove and establish through Rule 2004 examinations and an Adversary Proceeding the merits of Rescission claims and damages for the continued violations of TILA. This is all the more true and urgent in view of the United States Supreme Court decision in *Jesinoski v. Countrywide Home Loans*, 574 US ___ (2015) decided in January 2015. On February 23, 2015 US Supreme Court issued two more Judgments in *Keiran v. Home Capital, Inc*, Dkt. 13-705; and *Takushi v. BAC Home Loans Servicing, LP, and Dkt. 13-884.* In both cases, the petition for a writ of certiorari was granted. The judgment of the lower court was vacated, and the case is remanded to the United States Court of Appeals for the Eighth and Ninth Circuit

(respectively) for further consideration in light of *Jesinoski v. Countrywide Home Loans, supra*. These decisions underscore the importance of permitting this case to be expeditiously remanded back and resumed in the Bankruptcy Court.

# IV

## ISSUES FOR REVIEW

A.      Did the Bankruptcy Court and US District Courts commit an error of law and/or abuse its discretion when they failed to reconsider and accept the proposed Chapter 13 Plan and permit the Debtor to seek Rule 2004 examinations and an Adversary Proceeding, in order to establish Debtor's verified Rescission claims under *Sherzer,* 707 F.3d at 255; *Gilbert*, 678 F.3d at 271; *Williams v. Homestake Mortg. Co.*, 968 F.2d 1137 (11th Cir. 1992) and *Jesinoski v. Countrywide Home Loans, Inc.*, *et al.* 574 US ___ (2015), as well as applicable Federal law and Regulations.

B.      Did the Bankruptcy Court commit an error of law and/or abuse its discretion when its decision was not based on Debtor's verified Rescission claims toward the nominal lender Wells Fargo Bank N.A, ASC and Fst Tennessee (none were present at hearing and Chapter 13 trustee was acting and pleading their case), when Bankruptcy Court's decision is based on an erroneous conclusion of law after the alleged creditor's failure to return within twenty days after receiving the rescission notice, the consumer borrower any money or property that has been given to anyone, in connection with the loan See 15 U.S.C. § 1635(b); 12 C.F.R. § 1026.23(d)(2)., and failed to take steps to terminate the security interest. See 15 U.S.C. § 1635(b); 12 C.F.R. § 1026.23(d)(2). Once the lender has satisfied its obligations, the consumer borrower must

tender the amount owed on the loan, less interest and finance charges. See 15 U.S.C. § 1635(b); 12 C.F.R. § 1026.23(d) (3).

C.    Did the Bankruptcy Court commit an error of law and/or abuse its discretion when it granted, Chapter 13 Trustee's Motion to Dismiss,(MTD) which was moot due to Appellant's 100% Funded Chapter 13 Plan, which was based on both in substantive and insubstantial alleged grounds within the context of the facts of this case, thus denying the Appellant the protections and safeguards of his bankruptcy filing, and Bankruptcy court decision is not based on 's established rescission claim under Truth in Lending Act, ("TILA") and defense to a foreclosure, and ignoring any damages that debtor is entitled to receive because of creditor's lack of action after debtor's rescission. *See, e.g., Newton v. United Cos. Fin., 24 F. Supp.* 2d 444 (E.D. Pa. 1998) (acknowledging that TILA is a strict liability statute with the result that a lender that violates its provisions is liable regardless of whether lender's conduct was intentional, negligent, or inadvertent).

D.    Did the Bankruptcy Court erroneously implicitly rule that the True Owner of the real property is not a Necessary Party under Rule 19(a)(1)(B)*(i)* and did that constitute an erroneous reversible conclusion as against the interests of justice under all of the circumstances.

E.    Did Bankruptcy Court err in calculating charges and fees post a TILA Rescission:

a) Under TILA, post rescission, there are to be no additional charges or fees added. A consumer borrower who properly exercises her right to rescind "is not liable for any finance or other charge, and any security interest given by [him], including any such interest arising by operation of law, becomes void" upon rescission. See 15 U.S.C. § 1635(b) (2011). The lender loses its finance charges

for the period of time that the borrower enjoyed the loan proceeds or property, which can range from three days to three years, depending on when a consumer borrower exercises her right to rescind before it expires. See *In re* Ramirez, 329 B.R 727 736 (Bankr. D. Kan. 2005) (noting that a lender is also subject to a fine for each TILA violation).Moreover, the creditor is responsible for statuary, actual, punitive and other damages accrued for each TILA violation post rescission and attorney's fees. Thus, calculating and adjusting such damages could arguably lower the total amount owed on the loan, as the failure to honor a rescission required is a separate violation, giving rise to a separate claim for damages.

b) The "effects of rescission," as described in clause (d) of § 226.23, are that rescission (1) voids the transaction, including the security interest (DOT) created by it, by the operation of law. The statute and Regulation Z posits that under the plain language of Sections 1635 and 1026.23, the consumer borrower's giving of the notice of rescission automatically voids the security interest and accomplishes rescission (*See, e.g.*, Brief of Consumer Fin. Protection Bureau, as Amicus Curiae in Support of Plaintiff-Appellant and Reversal, *Rosenfield v. HSBC Bank, USA, 681 F.3d 1172* (10th Cir. 2012) (No. 10-1442), 2012 WL 1074082. ); (2) entitles the borrower to a refund of all amounts, including finance charges, paid in connection with the transaction; and (3) requires the borrower, after the lender has carried out its obligations in rescission, to refund any money or property that the borrower received as a result of the transaction. *See* 12 C.F.R. § 226.23(d). *See Watkins v. SunTrust Mortgage Inc.* 663 F.3d 232 (4th Cir. 2011).

c) TILA provides that (1) the borrower is relieved of any obligation to pay a "finance or other charge"; (2) the security interest created by the transaction becomes void; and (3) upon the lender's performance in returning money paid

by the borrower and in voiding the security interest, the borrower must return to the lender any money paid to the borrower.

d) Consistent with the common understanding of rescission, the creditor must give back all fees received from the borrowers and undo the security interest given with respect to the loan, and the borrower in turn must return the money it received. The parties are thus returned to the status quo ante.

e) If the rescission notice is sent, then the mortgage (DOT) and note are nullified by operation of law unless the "lender" files a lawsuit within 20 days contesting the notice of rescission, which Wells Fargo Bank N.A, ASC, BOA and Fst Tennessee never did, the 20 days window is closed and rescission whether right or wrong is self-imposed by operation of law.

F.     Did the Bankruptcy Court commit an error of law and/or abuse its discretion when it failed to require the Chapter 13 Trustee to appropriately and effectively protect the interests of the Debtor, in addition to protecting the interests of the alleged Creditors, and their attorneys to whom the trustee was instructing and providing the legal advice how to argue the case and write pleading, in verifying Debtor's claims, [*inter alia*, regarding Appellant's Rescission under the Truth in Lending Act, as amended ("TILA")] and seek to foster and establish a fair and reasonable record containing evidence favorable to the Debtor -- upon which the case should not have been dismissed on the basis of  in substantive allegations, involvement of Chapter 13 trustee Mr. Gorman's personal interests in looking after the interests of his girlfriend who was dictating him how to act, putting pressure on him to have judgment obtained as per her wishes and mere administrative issues.

G.     Did the Bankruptcy Court err or abuse its discretion in the application of the standards applied in a judicial proceeding, when without contradictory evidence, it accepted, trustee's objection to Debtor's more than 100% Funded

Plan, that was based on hearsay and lack of personal knowledge; thus denying the debtor, the protections and safeguards of a bankruptcy filing; Whether the Bankruptcy Court err or and abused its discretion in finding Debtor's plan to be filed in bad faith, even though good-faith payments of $ 3,366.76 per month were made from April- July 2015 (04 months a total of $ 13,467.04 still with trustee) post rescission, Appellant was regularly paying and would have paid $ $26,934.08 as of filing this brief and considering many other similarly and/or more underfunded plans that have been approved and/or repeatedly continued with the Chapter 13 Trustee's consent, in various other Chapter 13 cases filed in the Eastern District Virginia Alexandria Division without such bad-faith finding. In the past the Chapter 13 trustee have provided unnecessary help to his girlfriend who used to file chapter 13 plan based on bad faith and those plans were approved and or continued un-necessarily with the aid of Chapter 13 trustee Mr. Gorman, who could have recused from those chapter 13 underfunded plans.

## V
## ARGUMENT

Appellant Syed Askri will be arguing Issues on Appeal, as following:

### A. Debtor Acted in Good Faith and his Chapter 13 100 % Funded Plan is Not Prejudicial to Creditors, who were not before the court, and Chapter 13 Trustee was pursuing his own interests and not for the creditors

It is established that simple filing of a bankruptcy petition to avoid foreclosure does not constitute bad faith. *In re Jonathan Barnes Leavitt v. Carlos Soto*, 171 F.3d 1219 (9th Cir 1999) The only entities listed as "Creditors" in Appellants Bankruptcy Petition were the "Nominal Lenders", the servicers and all of the identifiable transferees of the mortgage loan. There are no other creditors

45

whatsoever involved.   Appellant objected to Trustee's characterization that, "Debtor did not file his Chapter 13 Petition in good faith as Debtor's intent in filing this case was only to frustrate his creditors' attempts to foreclose on his residence". (See *MTD pg 1Dkt.28)*  Appellant objected to Trustee's characterization that, "his   [Debtor's] proposal to avoid both the first and second deeds of trust on his residence." *(See MTD pg 1Dkt.28). Appellant* objected to Trustee's characterization that, "she   [Debtor's wife] was also using the automatic stay to challenge the validity of the mortgage lienholders of the notes secured by the same marital residence." *(See MTD pg 1Dkt.28)Appellant* objected to Trustee's characterization that,  " Similarly, in Debtor's present case, he is also seeking to make the same challenges to the validity of the mortgages on his residence that were already raised in Rizwana Askri's Chapter 13 case." *(See MTD pg 1and 2Dkt.28)* Appellant objected to Trustee's characterization that, "In fact, this Debtor[Syed Askri] interjected himself into Rizwana Askri's case to assert his claims, defenses, and disputes over the creditors' holder in due course status." *(See MTD pg 2Dkt,28)Chapter 13 trustee Mr. Gorman was poisoned by his girlfriend against the Appellant because of a fight between the Appellant's counsel and Mr. Gorman's girlfriend who used to be the partners and then separated. Mr. Gorman is not even to be fit for the trustee because he is using his personal interest to damage Appellants and the creditors. Appellant* objects to Trustee's characterization that, "Debtor does not have the ability to sustain the regular mortgage payments on his residence, let alone have the ability to make additional Plan payments to cure the substantial mortgage arrearage claims." *(See MTD pg 2Dkt.28)* Appellant objects to Trustee's characterization that, "Based on the mortgage arrearage claim filed by First Horizon Bank [14] and the mortgage arrearage

---

[14] Creditor is M&T Bank and not First Horizon Bank as alleged by the Trustee. The amount of POC is incorrect, with wrong calculations. See also  FN3

46

amounts asserted in the Objection to Confirmation filed by U.S. Bank,[15] the amount of mortgage arrearages on Debtor's residence as of the petition date now total $179,455.36,[16] which Debtor is unable to cure through a Chapter 13 Plan." (*See MTD pg 2Dkt.28*)

Appellant's proposal for payment of $ 3,366.76  for 60 months ($ 202,005.60 ) for the filed Proof of Claim,(POC) of $184,241.91 plus, Despite proposing a plan in good faith with a 100% payment amount on the filed POCs ($184,241.91), including an extra payment of $20,200.60 (10% for the Trustee's fee), the confirmation was denied.[Trustee's administrative fee is not more than 1.5% as admitted by the chapter 13 trustee in open court on August 13, 2015, during the trustee's motion hearing. (The trustee's administrative fee was proposed $ 17,436.97 more)   to the alleged mortgage creditor regarding the disputed and rescinded loan was made in good faith, based upon Appellant's prior formal Rescission thereof.

Appellant has repeatedly asked the Bankruptcy Court to recognize that the Rescission issue is the key contested matter and will require Discovery and an Adversary Proceeding, (AP) in order for the Bankruptcy Court to properly review

---

[15] The amounts are incorrect, and trustee having fiduciary duties towards both the creditors and Debtors failed to take notice of the incorrect accounting by the US Bank. Debtor repeatedly requested accountings, which were not provided. Under Virginia law, an accounting is a form of equitable relief which is available upon order of a court in equity. McClung v. Smith, 870 F. Supp. 1384, 1400 (E.D. Va. 1994), *See* Bain v. Pulley 201 Va. 398, 111 S.E.2d 287 (1959) In Wilkins v. Gordon, 38 Va. 547 (1841), the Virginia Supreme Court held that a trustee cannot proceed to sell a trust subject until the debts are settled and ascertained.  A party facing foreclosure has a right to petition the Court in equity for a determination on the debt owed when the amount is uncertain. Wilkins, 38 Va. at 556-57. *See generally Wills v. Chesapeake W. Ry. Co.*, 178 Va. 314 (1941) (a court sitting in equity may set aside an invalid foreclosure).  Under Virginia law, an **accounting is a form of equitable relief** which is available upon order of a court in equity.  *McClung v. Smith*, 870 F. Supp. 1384, 1400 (E.D. Va. 1994), to require trustees or agents to account for their actions in dealing with the funds of beneficiaries or principals *See Bain v. Pulley*, 201 Va. 398 (1959)
[16] Trustee's calculations are incorrect, failed to investigate the claims and false accountings submitted by the First Tennessee and US Bank.

the Rescission and make a determination. *See, e.g., Lopez v. Delta Funding Corp., Clearinghouse* No. 52, 140 No CV 98-7204 (CPS) (E.D.N.Y. Dec. 23, 1998) (foreclosure sale enjoined; indigent elderly homeowners not required to post bond); *Thomas v. F.F. Fin., Inc.*, 1989 U.S. Dist. LEXIS 3696 (S.D.N.Y. Apr. 11, 1989) (preliminary injunction granted against foreclosure where homeowner-plaintiff alleged *she had* rescinded, the creditor-defendant had failed to tender back to borrower fees and costs collected as required, and mortgage was null and void; court held no bond was required, and therefore there was adequate security against any damages arising from injunction for creditor defendant even if it prevailed on the merits).The Truth in Lending Act ("TILA") gives a consumer the "right to rescind" a transaction by "notifying the creditor, in accordance with the regulations … of his intention do so." 15 U.S.C. § 1635(a)

The regulations, in turn, provide that, "[t]o exercise the right to rescind, the consumer shall notify the creditor" in writing. 12 C.F.R. § 226.23(a) (2).Regulation Z, as adopted by the Federal Reserve Board and as republished by the Bureau, specifies that "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. §§ 1026.15(a) (2), 1026.23(a)(2). Under Section 1635 of TILA, a consumer has a right to rescind certain home mortgages. *Id.* § 1635(a). Rescission unwinds the transaction, and returns the parties to their pre-mortgage transaction status. *See JAMES M. FISCHER, UNDERSTANDING REMEDIES 730 (2d ed. 2006). Rescission is a conceptually distinct remedy from damages, which are based on affirmance, or acknowledgment, of a valid contract. Id.*

Rescission is defined as "[a] party's unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach." *BLACK'S LAW DICTIONARY (10th ed. 2014).* It is also defined as "an agreement by contracting parties to discharge all remaining duties of performance and terminate the

contract." *Id.* In short, rescission is accomplished either unilaterally or by mutual agreement of the parties. *Id.* Congress enacted Section 1635 to protect consumers from unfair and deceptive lending practices.

When a consumer exercises a valid right of rescission under § 1635, the transaction is cancelled. The effect of cancellation is governed by § 1635(b): The consumer "is not liable for any finance charge or other charge, and any security interest given by the obligor, including any such interest arising by operation of law … becomes void upon such a rescission." 15 U.S.C. § 1635(b)(2011); 12 C.F.R. §§ 1026.15(d)(1), 1026.23(d)(1). *See also Family Fin. Servs. v. Spencer*, 677 A.2d 479 (Conn. App. Ct. 1996) (creditor's failure to accept rescission notice nullified the mortgage, barring creditor from foreclosure); *Yslas v. D.K. Guenther Builders, Inc.*, 342 So. 2d 859 (Fla. Dist. Ct. App. 1977) ; *Willis v. Friedman, Clearinghouse* No. 54,564 (Md. Ct. Spec. App. May 2, 2002); *Community Nat'l Bank & Trust v. McClammy,* 525 N.Y.S.2d 629 (App. Div. 1988) (if rescission claim established, would be defense to a foreclosure on a nine year- old mortgage).

Section 1635(b) also governs the process of cancellation: Within twenty (20) calendar days after receipt of a notice of rescission, the lender must return any money or property given in connection with the transaction and take all necessary action to reflect the termination of the security interest. 15 U.S.C. § 1635(b); 12 C.F.R. §§ 1026.15(d) (2), 1026.23(d)(2).

When the lender has performed its obligations, the consumer must tender the money or property to the lender or, if that is impracticable or inequitable, must tender the property's reasonable value. 15 U.S.C. § 1635(b); 12 C.F.R. §§ 1026.15(d)(3), 1026(d)(3).

The alleged agents of holder of void DOT repeatedly failed and refused to provide any substantive documentation regarding the current purported owners of the mortgage, as well as the status and operation of the Trust, claiming that all such

information is confidential and proprietary. The Decision of Bankruptcy Court in Dismissing Appellant's Case without adjudication of Appellant's TILA Claims was erroneous on the merits for several reasons. It is contrary to the provisions of TILA and Regulation Z. It also fundamentally misunderstands the importance of the unique nature of rescission and its prompt application and enforcement, thwarting Congress's intent to establish a private, non-judicial remedial process. "Section 1635 is written with the goal of making the rescission process a private one, worked out between creditor and debtor without the intervention of the courts." *Belini v. Washington Mut Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005) ("[S]ection 1635 is written with the goal of making the rescission process a private one, worked out between creditor and debtor without the intervention of the courts."); *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1322 (9th Cir. 1998) ("When a party gives notice of rescission, it has effected the rescission, and any subsequent judicial proceedings are for the purpose of confirming and enforcing that rescission.").

The US Supreme Court further rejected all of the lender's arguments that TILA should be interpreted as requiring a consumer borrower to file a lawsuit in order to rescind a qualifying mortgage loan. *See Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015)(emphasis added). Finally, the Court's decision arguably resolves the debate over how to effectuate, or accomplish, rescission under Section 1635. Among the arguments for requiring the filing of a lawsuit is that the TILA rescission mechanism looks more like rescission-in-equity, which requires a judicial declaration of rescission, and less like rescission-at-law, which is accomplished privately by the parties upon tender of the rescinding party. *Jesinoski* is clear that "rescission is affected" by a consumer borrower's written notice to the lender that he intends to rescind. *Jesinoski*, 135 S. Ct. at 792. As a

practical consequence of this ruling, a lender now bears the burden of filing a lawsuit to contest the borrower's ability to rescind. In short, any questions about the mechanics of TILA rescission should be resolved. When consumers have a right to rescind under § 1635 and "elect to rescind, the mechanics of rescission are uncomplicated." *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir. 2007)

Again, Section 1635(a) and Regulation Z specify that consumers exercise their right to rescind by providing written notice to their lenders. Section 1635(b) entitles consumers to relief when they exercise a valid rescission right. And § 1635(f) limits the period of time consumers have to notify their lenders in accordance with subsections (a) and (b) and Regulation Z. This statutory scheme is consistent with the historical understanding that rescission may be achieved unilaterally upon notice to the counterparty to a contract.

Unless corrected by this Court, the Bankruptcy Court ruling may have significant unintended and undesirable consequences, including encouraging unnecessary litigation by consumers. The decision also frustrates basic principles of administrative deference — effectively delaying and possibly abrogating the enforcement of a federal regulation by exposing the Debtor to unwarranted, wrongful and illegal foreclosure proceedings and further litigation.

Appellant filed Bankruptcy Chapter 13, filed Schedules, Chapter 13 plan, and proposed for 60 months and paid $ 3,366.76 per month to chapter 13 trustee fundamentally seeking discovery and adversary procedures to enforce the rescission, a declaratory judgment terminating the security interest in her home, and damages, all before any adverse determination. In sum, the economic and financial interests of alleged "Nominal lender's" are simply not in jeopardy -- but

rather has been protected through increased fair market value, as Debtor has remained in possession and has continued to maintain the property as well as the Nominal Creditors also having been previously reimbursed by insurance over and above the note value. Accordingly, Appellant should be permitted to pursue his chosen remedy in Bankruptcy without possibly unnecessarily exposing him to further unjustified and unwarranted foreclosure proceedings by the unsecured alleged creditors through the requirement of his refiling of the bankruptcy.

B. *The United States Supreme Court has unanimously effectively endorsed the Validity of Appellant's Notice of Rescission.*

The recent unanimous United States Supreme Court decision, *Jesinoski v. Countrywide* Home Loans, Inc., 574 US ___ (2015) is a major sea change in the law of Rescission as applied in the Fourth Circuit underscores and fully supports the appropriate Notice of Rescission action taken by Debtor. (*See also.* On February 23, 2015 US Supreme Court issued two additional decisions in *Keiran v. Home Capital, Inc*, [Dkt. 13-705] and *Takushi v. BAC Home Loans Servicing, LP, [Dkt. 13-884].* In both cases, the petition for a writ of certiorari was granted, the judgment of the lower court was vacated, and the cases were remanded to the United States Court of Appeals for the Eighth and Ninth Circuit respectively for further consideration in light of *Jesinoski v. Countrywide Home Loans*.)

The Nominal Creditors and all of the identifiable transferees to date are fully on Notice of Rescission will not be prejudiced by allowing the bankruptcy proceeding to continue, because they will get paid through chapter 13 trustee after the approval of the plan. In particular, in the course of the Chapter 13 proceeding, Debtor has mailed and provided a copy of the Rescission Letter to each of the subsequent transferees and owners of the mortgage, as identified by

Debtor's Forensic mortgage analyst — all of whom have been listed as Parties in the Bankruptcy proceeding from the beginning. Moreover, Wells Fargo Bank N.A, ASC and Fst. Tennessee are servicers had the continuing duty and obligation of informing and advising all such transferees of such action.

Accordingly, all of the Parties to whom the mortgage has been transferred have been and are on full legal notice that the Debtor properly filed a Notice of Rescission. They are all on full notice of their respective legal jeopardy. See *Family Fin. Servs. v. Spencer*, 677 A.2d 479 (Conn. App. Ct. 1996) (creditor's failure to accept rescission notice nullified the mortgage, barring creditor from foreclosure); *Yslas v. D.K. Guenther Builders, Inc.*, 342 So. 2d 859 (Fla. Dist. Ct. App. 1977); *Willis v. Friedman*, Clearinghouse No. 54,564 (Md. Ct. Spec. App. May 2, 2002); *Community Nat'l Bank & Trust v. McClammy*, 525 N.Y.S.2d 629 (App. Div. 1988) (if rescission claim established, would be defense to a foreclosure on a nine-year-old mortgage)

As Appellant has properly and legally rescinded the mortgage loan the alleged creditors and now holder of void DOT owe Appellant an accounting and full reimbursement of all funds paid to them by the Appellant. Appellant also has additional claims and offsets against the alleged mortgage loan creditors. The bottom line is that Appellant does not have any obligation to make any payment, in bankruptcy through a Chapter 13 Plan, or otherwise, to the "Nominal lender", post rescission, but this Appellant proposed $ 3,366.76 per month for 60 months to Chapter 13 trustee in a good faith effort to resolve this issue..

Of critical relevance and significant importance is the recent landmark *Jesinoski* decision of the United States Supreme Court. The Court ruled that the requirements of TILA must be strictly construed --- apart from any common law notions of fraud or rescission. The Court emphasized that TILA rescission

53

was a unique statutory remedy and that the Common Law Right of Rescission is not applicable to the explicit and exclusive statutory remedy that is TILA Rescission.

It is important to note that this US Supreme Court decision has materially affected the law of Rescission in the Fourth Circuit and, as well as elsewhere. Accordingly, Appellant had now had his Notice of Recession judicially endorsed and believes that upholding the dismissal of his case at this time would be both unfair and unreasonable under all of the circumstances.

As submitted to the Bankruptcy Court, the statutory framework for Rescission under TILA is clear. *See Supra pg. 30-32*

## C. *Any Dismissal of Debtor's Claims in the Adversary Proceeding Should be Determined under Bankruptcy Rule 7012 (b).*

This case should not be dismissed for the reasons Ordered but Appellant's claims should be allowed to be presented in an Adversary Proceeding and potentially subject to the provisions of Bankruptcy Rule 7012 (b) which incorporate the standards set forth in Federal Rule of Civil Procedure 12(b)(6). Under such rules, the Bankruptcy Court should only dismiss Appellant's Rescission complaint, for any alleged failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999)

While courts must accept all precisely worded factual allegations as true, legal conclusions or unsupported inferences or assumptions in a complaint need

not be accepted in the context of deciding a Rule 12 motion. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"). When considering a motion to dismiss under Rule 12(b)(1), the court must take all facts alleged in the petition as true and draw all reasonable inferences in the favor of the petitioner. *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004)

### D. The Bankruptcy Court's Order contains inconsistencies and other errors of facts and law

The Court's Order contains inconsistencies and other errors of facts and law as further explained, and as such, the Debtor requests this Court to remand the case back to Bankruptcy Court with instructions to revise its prior Order [Dkt.51, 52] to allow the Debtor to continue the Chapter 13 or alternatively convert the case to Chapter 11.

### E. The Case was not filed in bad-faith

The Court also found that the Debtor filed the case in bad-faith because there was:

a.  The chapter 13 Trustee was to hold the $3,366.76 per month for 60 months plan payments of $202,005.60 until the debtor concluded litigation with the lender;

b.  The filed POC in this case are $ $184,241.91, which were more than 100% covered due to more than 100% funded Plan.

c. Trustee's administrative fees were proposed for $ 17,763.69, whereas as per admission the Trustee gets 1.5% as admitted by the Trustee in Open Court on August 13, 2015.

However, this case was not filed in bad-faith. It was also filed based on a rescission done in. Post rescission, the debtor is not obligated to make any further payments and the creditor cannot add additional fees and charges. Despite the Rescission, the Debtor proposed good-faith payments of $3,366.76, and paid $ 13,467.04, which is still with the Chapter-13 Trustee. Appellant's proposed plan also included the provision that the plan payments will be increased or decreased after debtor's adversary proceeding is resolved. This Bankruptcy and plan should not be found to be filed in bad faith, considering many other similarly and/or more underfunded plans that have been approved and/or repeatedly continued with the Chapter 13 Trustee's consent, in various other Chapter 13 cases filed in the Eastern District without such bad-faith finding.

VI

CONCLUSION

It was error and/or an abuse of discretion, under all of the facts and circumstance and in light of the *Jesinoski* ruling, for the Bankruptcy Court to deny Appellant's good faith request, following her appropriate Notice of Rescission, through Discovery and Adversary Proceedings, where there is no substantive financial jeopardy to the Nominal lenders, as well as no other Third Party Creditors involved.

VII

RELIEF REQUESTED

The rulings of the Bankruptcy Court in dismissing this Chapter 13 proceeding are erroneous and the case should be remanded back to the Bankruptcy Court for further proceedings as requested, to revise and reconsider its prior holding of dismissing the case for Debtor's ineligibility to be a Chapter 13 debtor and for a bad faith filing, and either reinstated the case to allow an adversary proceeding, or in the alternative, allow Debtor to convert the case to a Chapter 11.

## IX
## PRIOR APPEALS

There is no prior appeal in this matter. Respectfully submitted this 09th day of March 09, 2016

Syed Askri (Pro Se)
23367 Kerrisdale Way Sterling, VA 20166
Phone:  (443) 867-7571

## CERTIFICATE OF SERVICE

I hereby certify that copy of the above was mailed to the following, *via* USPS, First Class Mail postage Paid;

1. M&T Bank N.A[17] f/k/a Wilmington Trust Plaza Office
   301 West 11th Street
   Wilmington, DE 19801

2. LVE III Homeowners Association Inc
   Gallows Road, Ste. 700
   Tysons Corner, VA22182

3. Thomas P. Gorman, Trustee
   300 North Washington Street, Suite 400
   Alexandria, VA 22314

March 09, 2016

Syed Askri (Pro Se)

[17] See FN1